Excuse me. Case number 18-5045, James Barrow v. City of Hillview Kentucky et al. Oral argument not to exceed 15 minutes per side. Mr. Basil for the appellant. May I please the court? May I reserve two minutes for rebuttal? You may. Thank you, Your Honors. My name is Ben Basil and I'm counsel for appellants Officer Scott Barrow and Officer Danny Cook. The appellants respectfully request that this court reverse the ruling of the Western District of Kentucky and remand this case for trial because the appellants have established a conspiracy in violation of 42 U.S.C. section 1985 number 2 and section 1986 that is not barred by operation of the intra-corporate conspiracy doctrine. And second, because appellants spoke and acted as private citizens about a matter of public concern when they cooperated with the FBI's investigation in criminal prosecution of their employer, Chief Capel, and testified at his criminal trial. In this case, of course, what happened was the chief of police and the police major ordered the officers to move a backpack meth lab out of the mayor's backyard and one of the officers reported that to the FBI. The FBI began investigating and Chief Capel was eventually indicted and found guilty of making a false statement to the FBI when he lied about his involvement in the removal of the meth lab. What we have alleged, and we believe the facts support sufficient to get past the motion for summary judgment into trial, is that there was a conspiracy between Chief Capel and Major Straughn. But if they were acting in the scope of their employment, then the intra-corporate rule applies, right? Yes, I think that is correct based on this court's precedent, if they were acting within the scope of their employment. Weren't they doing that? I mean, your allegation is that they were disciplining your clients, right? I mean, you say that it was pretext or whatever it was, but weren't they acting within the scope of their employment when they were doing that? No, I don't think that they were acting within the scope of their employment and I don't think the facts support that. There are two exceptions to the intra-corporate conspiracy doctrine that are intertwined in this case. One is that they weren't acting in the scope of their employment, and second is that they were acting in their personal interest. As to the scope of employment, it's certainly outside the scope of the employment duties of a police chief or a police major to deter truthful testimony. It's certainly outside the scope of their employment to retaliate for an illegitimate interest. I just want to stop you for a second. Elaborating on that, do you look at the asserted retaliatory conduct or do you look at the alleged objective? And do you have cases that address that? Judge, I think you must look to both. You've got to look at the conduct itself. Certainly, it's within the scope of the employment duties for a chief of police or a police major to take disciplinary action against officers. We would concede that. The issue here is the disparate treatment of these officers. Officer Barrow was cited for speeding in the police department parking lot in his patrol vehicle. We're aware of no other police officer in the city of Hillview who has ever been so cited. But that's still in the scope of his employment to cite somebody for doing that, right? It's something that he could do as a supervisor, right? He could as long as it wasn't motivated by the desire to retaliate. It's also important, Judge Novandian, to note here that according to the City of Hillview Police Department's own policies, a police officer who has been indicted is not to exercise their police powers. One of their police powers is citing people for violations of law. Chief Capel, at the time that he cited Officer Barrow for speeding in the department's parking lot, had been indicted. Yet, he didn't surrender any of his police powers. He retained his police weapon. He retained his badge. He reported for duty at the police department. He disciplined Officer Cook and Officer Barrow, which according to the Hillview's own policies, he should not have been able to do because he should not have been exercising police power. Yet, he continued to do all of those things. Both Officer Barrow and Cook, in the pleadings, have alleged that even when Chief Capel said that he was abstaining from exercising his police powers, he wasn't still exercising them in effect through Major Straughn, through his co-conspirator. I believe it was Officer Barrow who said that Straughn didn't take any actions without first clearing it with Chief Capel. Capel, by the operation of the city's or the police department's own policy, should not have been engaging in police activity. Yet, he was. The disciplinary action that was taken against both Barrow and Cook, we think was pretextual. I think the evidence supports that. It was disparate in the sense that other officers committed the exact same infractions that the department alleged that Barrow committed, for example. Yet, they weren't suspended. One of the allegations against Barrow was that he effected a traffic stop without triggering his vehicle's camera. There have been other officers, including Major Straughn, who did the exact same thing, who engaged in pursuits or traffic stops without triggering their vehicle's camera. They weren't disciplined at all. Does it make any difference if some of these actions to discipline Barrow and Cook occurred in the context of these quasi-monthly meetings, apparently, that were held at the Hillview Police Department? So it wasn't just Capel and Straughn, if I'm correct by the record, who were present. There were other members of the force who were there, and this discipline was meted out, sort of in connection with the regular routine meetings that occurred. Am I right about that fact in the record? Wouldn't that lend further support to the notion that this was within the scope of the duties of Capel and Straughn, I think it is? Certainly, Judge. The disciplinary action was initiated by either Capel or Straughn or both and signed off on. These were the top two ranking officers in this department, and there could be no discipline. If Capel, the chief, didn't want someone to be disciplined, they wouldn't be. If he did want someone to be disciplined, then they would be. No one could overturn Capel's disciplinary decisions. However, there is a civil service board in Barrows. Some of the disciplinary actions were appealed to the civil service board. In Cook's case, there was a settlement before the hearing before the civil service board, so the civil service board never heard any of the disciplinary charges. In Barrows' case, they did hear the disciplinary charges and they upheld the discipline. At the civil service board, the only issue that could be raised, according to Kentucky Statute KRS 90.360 Section 3, was it confines the scope of the hearing to issues presented in the written charges. So only the charges against Barrow could be litigated before the civil service board. There was no opportunity to raise claims arising under federal law about conspiracy. But can't you raise things in defense? In fact, to the extent that Barrow attempted to raise the issue that other officers hadn't been disciplined for similar or the same conduct, the civil service board expressly refused to consider that evidence and said that it wasn't appropriate in defense. There were other issues with the operation of the civil service board, which I think are not before the court. And it's also important in the operation of the intra-corporate conspiracy doctrine to recognize that Chief Capel and Major Strawn had personal objectives to retaliate against Cook and Barrow and to deter their testimony. They wanted to protect their political patron, Mayor Edens, who we can at least infer that Edens is the one who ordered Capel to have the meth lab removed from his own property. They also wanted to avoid being incriminated or prosecuted by the FBI. Of course, Chief Capel eventually was not only prosecuted but found guilty of lying to the FBI. They wanted to avoid that from happening, and they wanted to protect their jobs. They wanted to retain their positions as chief and major, and having two sworn officers testify under oath that they were ordered to commit a criminal act is not the best way to keep a job in law enforcement. And I think there can be no—I mean, there is certainly no legitimate law enforcement interest in punishing witnesses who testify truthfully before the FBI. Turning to the argument about the first— But we haven't really recognized that exception, have we, the personal interest exception? This Court has not expressly recognized an exception for personal interest. Certainly, courts within this Court's circuit, district courts and state courts in Michigan, have recognized that exception. I think in this case, the personal objectives of Capel and Strawn and their activity outside the scope are so intertwined that they are difficult to untangle. This Court should recognize that when, especially in this case, when corporate actors who are public servants act not for the good of the city, that they are sworn to serve and protect their department, that they cannot use their own personal interests as a shield to a conspiracy claim. However, even if this Court should find that the personal objectives exception to the Intracorporate Conspiracy Doctrine doesn't apply in this circuit, certainly this Court has already, in Johnson and Hills and Dales General Hospital, recognized that if the action is outside the scope of employment, then the Intracorporate Conspiracy Doctrine wouldn't apply. And I think it's clear from the evidence that it was outside the scope. Also, these gentlemen spoke as citizens on a matter of public concern. I think there's no question that there was a matter of public concern. The only question is, were they speaking when they testified pursuant to subpoena, when they cooperated with the FBI? The only question, I think, is whether they were speaking as police officers, as employees of the city of Hillview, or as citizens. They were speaking as citizens. They're not employed by the FBI. You're talking about your First Amendment claim? Yes. Yes, Your Honor. Did you argue the opposite, though? We have argued both. We have argued in the alternative that— But did you give the District Court any facts to support that they were acting outside the scope? Well, it was certainly pled that they were acting outside the scope in the complaint. By the time summary judgment came around, what did you give to the District Court on this? Well, I think there was an argument about Garcetti, Garcetti v. Sobielson, Lane v. Franks. And the argument is essentially that the officers are not employed by the city to investigate public corruption. They're not employed by the city police to investigate other sworn officers. They're not employed by the city to prosecute federal crimes. I mean, they were patrol officers. But you were telling the District Court they were punished in their employment for what they were doing and that they were acting as employees, right? Yes. For your Kentucky employment claim? Yes. There are two claims that are made in the alternative. One is a tort of wrongful discharge, and the other was the First Amendment claim. We certainly argued in the alternative, concede that the argument in the response to motion for summary judgment about the First Amendment claim was not as well fleshed out as it could have been. However, I think we've done enough to preserve that. It looks to me like when I'm reading your summary judgment brief that you're picking a theory. I mean, you're picking the they're acting within the scope theory, right? I mean, that's the way it reads to me. I don't know. It seems strange for me to have you come up here now and say the District Court made a mistake when I'm not sure it was presented to the District Court that way. I think that we did enough to preserve the argument as to the First Amendment. However, I'll agree with you that it wasn't fully fleshed out in the response to the motion for summary judgment. And the matter of public concern that you believe that Barrow and Cook spoke out on would be the issue of public or political corruption. That's the public concern that you would identify? Yes, Your Honor. I think the issue of public concern is that it appears that the mayor of the city of Hillview ordered the chief of police to have a meth lab removed from his property and then to report to the Bullitt County Sheriff's Department that the meth lab was found somewhere else in an effort to protect the mayor from having the publicity, having the public become aware that there was a mobile meth lab found on his property. And I think the other matter of public concern is what happened when, you know, the fact that the officers were ordered to move this meth lab and then to cover it up. Certainly the public, I'd say that public corruption is a matter, a quintessential matter of public concern. You'll have your full rebuttal. Thank you. May it please the Court, Counsel. Your Honors, I'm Mark Osborne. I represent the city of Hillview, Kentucky, Glenn Capel, and Kenneth Straughan. The district court in this case dismissed plaintiff's conspiracy claims pursuant to the intercorporate conspiracy doctrine. I will get into a little bit about the history of that doctrine and the reason for or the basis of that exception. In this case, let me jump ahead a little bit and just dispose of the First Amendment part of the case. There's no doubt in this case that when the plaintiff came forward with his proof, it is undeniable that they took the position that the officers were acting within the course and scope of their employment when they cooperated with the FBI and when they testified at trial. They pled the First Amendment claim in the alternative. Then when they came forth on summary judgment, the district court pointed out, well, you can plead in the alternative, but if you're going to come forward with a claim on the First Amendment, you've got to prove it beyond the summary judgment standard. They took disparate positions, totally opposite positions in that regard. The court basically said, you can't have it both ways. You can have it both ways. You can have it both ways. You can plead in the alternative, and as long as you have facts that would support either position, it's fine. There's no rule that says that you have to choose, is there? You have to choose sooner or later, and they came forth with no facts to support their First Amendment. That's a different story. Coming forth with no facts is different from saying that it's summary judgment time, now you have to pick a horse. I don't think that's the law that you have to pick which theory you're going with. But they have to come forward with the proof of the case. The proof of the case that they provided to the court was that we were acting within the scope of our employment. But why would they have to do that? If they said, hey, we're acting within the court's scope. Worst case scenario, there's a disputed issue on that. If there's a disputed issue on that, then I get my First Amendment claim. And as Your Honor pointed out, they came forth with no proof, facts to support the First Amendment. Why do they just say, we think it's this theory, here's our evidence, and you say, no, that's not right. And then they say, well, that's fine. If it's not right, then it's a disputed issue, and I get to pursue my other theory. I'm going to go with my other theory then. Let's say it's a disputed issue of fact, whether they're in the course and scope. So we're still going to trial, right? Summary judgment is denied. It's a disputed issue whether they're acting in the scope or not. So they've got two claims. They're still alive. I don't know when you have to pick, but at some point they're going to have to. But why wouldn't they be able to have both of them? Well, on summary judgment. They have to pick at summary judgment? There has to be proof to defeat my motion for summary judgment on the First Amendment claim, and there is none. Well, but the problem is, at least it seems to me, that the facts are there. I mean, we know the facts. We have the allegations, and then we have the facts to support it to the extent that there's discovery. So counsel takes the facts and puts it in a box, and it may turn out it doesn't fit there. But plaintiffs have already said, it's not like at the last minute they say, well, if it's not that, it's a First Amendment claim. The First Amendment claim is in the case, and it's not that the facts aren't there, because the same facts that they want to use to support that it's in the course of employment, they're the exact same facts that ultimately they want to use for the First Amendment. Now, they have to get over the hump. They have to show that that's enough for a First Amendment claim. But if the facts are the same, why can't they pursue that avenue? Judge Simpson specifically addressed that issue. He said the defendants argued that it was plaintiffs' sworn duties as police officers to report any such suspected illegal activity to appropriate law enforcement authorities, which they did. Here's what he said, and this is what we agree with. He adopted my argument that it cannot be reasonably disputed that Beryl and Cook's reports to law enforcement authorities were made pursuant to their official employment duties. Plaintiffs do not dispute this argument. In fact, they admit that they believe their cooperation with the FBI was pursuant to their official employment duties, stating in their own brief, summary judgment brief, as we now believe is clear, plaintiff's speech was action constituting performance of their law enforcement duties. Rather, Beryl and Cook clarify that they bring count three only as an alternative to count two in case the court may not agree that cooperating with the FBI and testifying in the capo suit was part of plaintiffs' law enforcement duties. The judge didn't. Judge Simpson did not agree with that. Well, and the plaintiff said in the event that you don't agree, then at least there's a First Amendment violation. I mean, if you don't agree and then so it's not in the course of employment, then it's a First Amendment claim. The district court ruled as a matter of law at summary judgment that it cannot be reasonably disputed based upon the plaintiff's own testimony that they were acting within the scope of their employment. But what do you do about the fact that it's a question of law? I mean, they can say it is, you can say it is or it isn't, and anybody can say whatever they want, but ultimately for purposes of the First Amendment, that's not a question for the jury. It's a question for the court whether what they did falls on which line of this court-created line that separates the public interest from the purely for employment. Yes, Your Honor, and Judge Simpson decided as a matter of law because it is a matter of law. Okay, but then isn't it proper for us to review that determination because it's a matter of law? Don't we have a chance to say, well, he either got it right or wrong? Absolutely. Okay, okay. Absolutely, Your Honor. So back to the inter-corporate conspiracy doctrine. When Section 1985 was legislated, you'll see in the briefs that the Travis Court goes into the history of Section 1985 and takes it all the way back to the Sherman Act. And the law is so clear on this side of the coin. By the way, the Supreme Court of the United States has pointed out that the circuits are split with regard to whether we're going to apply the inter-corporate conspiracy doctrine, i.e., that a city cannot conspire with itself by and through its employees or not. The circuits are split. The majority do follow the law with regard to the inter-corporate conspiracy doctrine, and it is clearly established that the Sixth Circuit applies the exception. That is clearly established in the Sixth Circuit. Each and every one of the arguments that have been proffered by the appellant have been addressed in Sixth Circuit cases, and the appellant's reliance upon cases like Brever from the Tenth Circuit is totally misplaced. The Tenth Circuit has not even adopted the inter-corporate exception to Section 1985. In this case, here's what happened. The plaintiffs were given disciplinary action as a result of what Officer Cook admits in one instance was poor police conduct. They initially appealed their adverse employment decisions to the Civil Service Commission because they are not employees at will. When that occurred, they said, well, we're whistleblowers. They filed suit against the city under the Kentucky Whistleblower Act. The court determined that the Kentucky Whistleblower Act does not apply to cities. The next thing they do is they say, well, we can't sue you under the Whistleblower Act, so we're going to sue you under Section 1985, and we're going to try to establish a conspiracy. The question becomes, what case law or what law applies as a remedy to the alleged misconduct on the part of the city? The whistleblower claim is out under Kentucky law. The conspiracy claim is out under Section 1985 because the Sixth Circuit has adopted the inter-corporate conspiracy doctrine. Let's say we take the city out of it, and we're talking about the two individual defendants. The plaintiff has to show that this was not done in the course of their employment. Basically, it's an inter-corporate exception because you're not even talking about the city now. You're talking about the two of them. Are they really two separate entities? Isn't that the real question? The question, yes, ma'am. If they are acting within the course and scope of their employment, then they are acting as the city, and the city cannot conspire with itself. Right. Now, what if they're not? If they're not acting in the course and scope of their employment, they're acting as rogue individuals? Then that would be an exception. Okay. How does one determine that, and how do the cases tell you that you determine it? The court looked at each and every argument. The courts that have adopted the inter-corporate conspiracy doctrine have looked at each and every one of the arguments that have been advanced by the appellants. First of all, with regard to the multiple actor analysis that Your Honor just brought up, again, it goes back to the history and purpose of Section 1985. The law protects corporate entities from the pressures of conspiracy by protecting them from internal corporate decisions that are being made by various and multiple actors. The significance there is that's what we looked at. That's what we look at in determining whether there's a conspiracy. That's the basic question. The fact that there are multiple people involved in the decision is not dispositive. The reasoning goes to this, is that if the multiple actors are acting within the course and scope of their employment, then they are acting only on behalf of the city, and the city cannot conspire with itself. Why is it not the case that if I happen to have a job where I can do things, I can discipline people, I can grant permits, I can do all this stuff, it's my official job, but I have some personal vendetta against somebody, and I do something official, but I'm motivated by my vendetta. Why is that? Why do I still get the protection of this exception? If it is done within the course and scope of your employment. Just a formal question. Am I authorized to deny permits? Yes. If I denied it because of some personal dispute I have with you, that's fine. We don't look at that at all. All we look at is, is it in my job description? It may be actionable under the 14th Amendment, but it's not actionable under Section 1985 as a conspiracy. So you're saying, okay, so they might have a 1983 claim or something like that. In the example that you just gave me, perhaps they were denied a property right with regard to the permit. But what if it was me and Judge White that decided that we have a personal vendetta against somebody and we together are authorized to deny permits or whatever it is? The issues of pretext with regard to the discipline and the issue of the personal stake have been addressed by the courts, and Your Honor brought up the personal stake exception, which has not been adopted by the Sixth Circuit in the context of Section 1985. I'm sorry. Are these doctrines just kind of rise and fall together, or how? I thought they were separate, the scope of employment and the personal interest. Are they related? How does that work? If the acts were done within the course and scope of their employment, then there is only one actor, the city, and the city cannot conspire with itself. What about the argument that according to the city's rules, once he was indicted, he was not really acting in the course of his employment? Again, that goes to the circumstantial evidence argument, that it goes to the evidence of the discipline and the pretext for the discipline, and those exceptions have not been adopted by the Sixth Circuit under... No, but this is the first one. The pretext is different from in the course of your employment. I mean, if in fact at that point he was disqualified and he should have been out of there and not touching any of this... Well, it is circumstantial evidence. But then why isn't it a question for the jury? Because the standing law is that circumstantial evidence of pretext or of personal stake does not take it out of the inter-corporate conspiracy doctrine in the Sixth Circuit. But I thought Judge White's question was he wasn't in the scope of his employment because he was under indictment. Isn't that the argument? He was under indictment. He is not authorized to disappoint anybody. So how was he acting within the scope of his employment at that point? Well, and the record shows that in fact that at best he was attending meetings and that he was not imposing that discipline. And, you know, you've got all of this circumstantial evidence which is not germane to the question before the court on Section 1985. For instance, the mayor, there is no evidence in the record anywhere that the mayor ordered that the meth lab be removed. These matters of circumstantial evidence are not relevant to the Johnson analysis that Judge Simpson recognized as the controlling law in the Sixth Circuit with regard to the applicability of this doctrine. What's the best case that distinguishes, or do you have any cases that specifically address whether you look at the circumstances in which the decision is made as opposed to the motivation? Johnson v. Hills and Dales. Johnson v. Hills and Dales. Okay. Thanks. Okay. Thank you, Mr. Osborne. Thank you. Your Honors, as to the issue regarding the intercorporate conspiracy, I think the evidence of the record establishes that Chief Capel and Major Strawn acted with an unlawful motive to retaliate, punish, and deter Barrow and Cook. It's also evidence of disparate treatment, and courts within this circuit have ruled that enforcement of an otherwise valid law, or as in this case a policy, can be a means of violating constitutional rights. That was in Feudernick v. Sumter Township, 78 F. 3rd, 1051, and Vakilian v. Shaw, 335 F. 3rd, 509, both cited in the brief. The policy of the Hillview Police Department, it's very clear that you don't retain your police powers when you're under indictment. If you're exercising those police powers when you're under indictment and contravention of the policy, you must be acting outside the scope of employment. And, of course, Chief Capel initiated these disciplinary actions and signed the disciplinary decisions. We think that the evidence is sufficient to get past summary judgment. But you have to have two, right? So who's he conspiring with? Major Strawn, who was, when Capel was saying that he was not participating, he was participating through Strawn, who was his right-hand man, and as Barrow testified, he didn't believe that Strawn did anything without checking with Capel first. And, of course, the personal interests of both Capel and Strawn were present there. As to the First Amendment issues, there's a question of law. The facts that support the argument that these gentlemen were acting as citizens were briefed. They were raised to the court below. It's certainly true that the motion for summary judgment, excuse me, the response, that the plaintiff has two pages covering the First Amendment, but I think it's certainly enough to preserve the First Amendment issue for a decision by this court. I just have a quick question on the time element. So they had already spoken to the FBI when all this disciplinary stuff began? Yes. Barrow was the person who originally reported the moving of the meth lab to the FBI. He's the first person to do it. There was no discipline until after that it occurred. Then Detective Cook began cooperating with the FBI, and both testified that they believed that the department was aware or at least suspected that they were the ones who had cooperated with the FBI. And then when did the indictments occur? I'm not sure the date of the indictment, but the criminal trial occurred after the disciplinary actions had already occurred. Okay. Thank you, counsel, for your arguments today. Thank you. The case will be submitted.